UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATIVIDAD S.,[1]

                              Plaintiff,           Case No. 1:20-CV-01507

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Natividad S. brings this action pursuant to the Social Security Act, seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the reasons that follow, Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

## BACKGROUND

On February 9, 2015, Plaintiff protectively filed an application for both DIB and SSI with the Social Security Administration (the "SSA"). Tr.[2] 339-345, 346-351. He alleged an onset date of January 23, 2015, due to major depression, posttraumatic stress disorder ("PTSD"), bipolar disorder, insomnia, anxiety, and panic attacks. *Id*. On September 15, 2017, Administrative Law

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.
[2] "Tr." refers to the administrative record in this matter. ECF No. 10.

1

Judge David. J. Begley (the "ALJ") issued a finding that Plaintiff is not disabled. Tr. 129-142. Subsequently, Plaintiff appealed, and the Appeals Council remanded this claim in 2018. Tr. 148-51. A new hearing was held on September 27, 2019, before Administrative Law Judge William Weir (the "ALJ"). Tr. 44. Plaintiff appeared in Buffalo, New York, and was represented by attorney Nicholas DiVirgilio. *Id*. On November 20, 2019, the ALJ issued a decision finding that Plaintiff is not disabled. Tr. 7-25. On August 19, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

The Social Security Act provides that "any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action" in a federal district court. 42 U.S.C. § 405(g). Although the Act does not define "final decision", the SSA Regulations (the "Regulations") have clarified that, "if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, . . . the Council denies the request for review, the ALJ's opinion becomes the final decision." *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000); *see also* 20 CFR §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a).

When reviewing a disability determination, the court's inquiry is limited to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). However, the Act holds that if a decision is supported by substantial evidence, then the decision is "conclusive." 42 U.S.C. § 405(g). *See Gamer v. Secretary*

*of Health & Human Services*, 815 F.2d 1275, 1278 (9th Cir. 1987). Substantial evidence is "more than a mere scintilla [and] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court "must review the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion." *Gamer*, 815 F.2d at 1278. Although it is not the Court's function to "determine *de novo* whether [the claimant] is disabled" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998), this Court "need not accept the decision of the Commissioner where he has failed to consider explicitly evidence necessary to a fair determination of plaintiff's application for disability benefits." *Sobolewski v. Apfel*, 985 F. Supp. 300, 315 (E.D.N.Y. 1997). However, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency," and "[a]n agency's interpretation of its own regulation is controlling unless it is plainly erroneous or inconsistent with the regulation." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457, 1478 (9th Cir. 1989).

**II.     Disability Determination**

"Under the Social Security Act, the Social Security Administration (the "SSA") is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a 'disability.'" *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003). An ALJ must follow a five-step, sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). A claimant "bears the burden of proof as to the first four steps" *Kinal v. Saul*, No. 18-CV-00673-LGF, 2019 U.S. Dist. LEXIS 162278, at *6 (W.D.N.Y. Sep. 23, 2019), and "[i]f at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Thomas*, 540 U.S. at 24.

3

First, an ALJ must determine whether a claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1520(b). [3] If a claimant is engaged in SGA, then he or she is "not disabled"; if he or she is not engaged in SGA, the ALJ proceeds to step two. At step two, an ALJ determines whether a claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If a claimant's impairment, or combination of impairments, is not severe, the analysis concludes with a finding of not disabled. If the impairment, or combination of impairments, is severe, the ALJ continues to step three. At the third step, an ALJ examines whether a claimant's impairment, or combination of impairments, meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment or impairments meet or medically equal the criteria of a Listing and meet the durational requirement, *id*. § 404.1509, then the claimant is found "disabled." If not, prior to step four, an ALJ must calculate a claimant's residual functioning capacity ("RFC"), which is his or her ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the impairment or collective impairments. *See id*. § 404.1520(e)-(f).

At step four, an ALJ determines whether a claimant's RFC allows him or her to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If a claimant's RFC indicates that he or she can perform such requirements, then he or she is found not disabled. *Id*. If he or she cannot perform such requirements, the analysis proceeds to the fifth and final step wherein the burden shifts to the ALJ to show that the claimant is not disabled and is able to do other work. *Id*. § 404.1520(g). Specifically, an ALJ must evidence that a claimant is able to:

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See* Chico v. Schweiker, 710 F.2d 947, 948 (2d Cir. 1983).

> engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U. S. C. § 423(d)(2)(A). *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983). Moreover, this Circuit "has consistently required that the [ALJ] identify specific alternative occupations available in the national economy that would be suitable for the claimant and that these jobs be supported by a job description clarifying the nature of the job, [and] demonstrating that the job does not require exertion or skills not possessed by the claimant." *Heckler*, 461 U.S. at 464 (internal quotation marks omitted).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for DIB and SSI under the process described above. *See* Tr. 7-9. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since January 23, 2015, his alleged onset date. Tr. 13. At step two, the ALJ found that Plaintiff had PTSD and polysubstance use disorder. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of any Listings impairments. Tr. 13. Subsequently, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional[4] levels. Tr. 15. Additionally, the ALJ determined that Plaintiff had the following non-exertional[5] limitations:

---

[4] Exertional limitations are defined as:

> physical limitations that affect the claimant's ability to meet the strength demands of jobs in terms of the claimant's strength for sitting, standing, walking, lifting and the like.

*Sobolewski*, 985 F. Supp. at 310. *see also* 20 C.F.R. § 404.1569a(a), (b).

[5] Non-exertional limitations are defined as:

5

> [T]he claimant is limited to occasional social contact with coworkers, supervisors and the public. He has no limitations in the ability to do simple, repetitive (one or two-step tasks), unskilled work. He could occasionally perform complex work, defined as work involving multiple simultaneous goals, or objectives or involving the ability to set quantity quality or methods standards.

Tr. 15. Correspondingly, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. Tr. 23.

Lastly, at the fifth step, the ALJ determined that Plaintiff's ability to perform work at all exertional levels was compromised by his non-exertional limitations. Tr. 24. Accordingly, the ALJ consulted vocational expert Dale Pasculli to determine the extent of these limitations and asked whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functioning capacity. *Id*. Pasculli testified that Plaintiff could work as a Cleaner/housekeeping and Routing clerk. Tr. 23-24. Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff could make a successful adjustment to other work and found that Plaintiff is not disabled. Tr. 24.

**II.     Analysis**

In substance, Plaintiff's sole argument on appeal is that the ALJ provided an inadequate analysis of his emotional support dog, for which he allegedly received a prescription from treating Nurse Practitioner Sharon Yager ("Yager"). ECF No. 13 at 2. However, even if the ALJ failed to adequately discuss the issue, Plaintiff failed to present sufficient evidence demonstrating that his emotional support dog was medically necessary. Therefore, the ALJ's failure to *explain* why he did not consider the emotional support dog in his decision is harmless.

---

one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands and includes manipulative impairments and pain.

*Sobolewski*, 985 F. Supp. at 310. *See also* 20 C.F.R. § 404.1569a(a), (c).

While an ALJ "should set forth a sufficient rationale in support of his decision," *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982), courts in this Circuit have held that "even if the ALJ failed to adequately explain his reasoning, remand is not necessary where it is conceded that any new analysis would have no effect on the ultimate determination." *Rivera v. Colvin*, No. 13-CV-610S, 2014 U.S. Dist. LEXIS 137321, at *9 (Sep. 28, 2014). Moreover, where "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Regarding emotional support animals, an ALJ is not obligated to determine whether a claimant's functioning would increase with the animal; rather, the question is whether a claimant is unable to function *without* the animal. *See Cruz v. Comm'r of Soc. Sec. Admin.,* 406 F. Supp. 3d 1337 (M.D. Fla. 2019); *Santos v Colvin,* No. 3:12-cv-05827-KLS2013, U.S. Dist. LEXIS 130810, at *15-17 (W.D. Wash. Sep. 12, 2013).

In this case, Plaintiff presented insufficient evidence that would have allowed a reasonable ALJ to conclude that his emotional support dog was medically necessary. Although Plaintiff contends that his emotional support dog was "prescribed" by Yager, *see* ECF No. 11-1 at 12, in the numerous medical records, notes, and treatment plans that Yager and other physicians provided to the SSA, there is little to no reference to a "prescription" for the dog, nor the benefit it provides to Plaintiff, nor Plaintiff's inability to function in the workplace without it. The sole instance where Yager referenced the dog was in a letter she wrote, at Plaintiff's request, to his landlord stating that:

> Due to his mental disability, [Plaintiff] has certain limitations related to coping with anxiety. In order to alleviate these difficulties, and to enhance his ability to live independently and to fully use and enjoy the dwelling unit you own, I have prescribed [Plaintiff] to keep his emotional support animal. The presence of this

> animal is necessary for the mental health of [Plaintiff] because its presence will mitigate the symptoms he is currently experiencing.

Tr. 543.

Furthermore, Plaintiff has been under Yager's care for over eight years and has owned the dog for seven. ECF No. 11 at 13. Despite this, however, Yager failed to reference or include the dog in Plaintiff's functional limitation assessment and further noted in an employability assessment that, "operating independently [could] be helpful for [Plaintiff] as he has the ability to be a reliable employee"—with no reference to the dog. Tr. 900; *see also* Tr. 460. Moreover, the only other time where Yager references the dog is in her check-up report notes, where she summarizes Plaintiff's feelings and progress. Still, however, she does not mention the dog in any plans of care, treatment plans, or medication lists.

Accordingly, Yager's letter could not be reasonably interpreted as a formal 'prescription' of an emotional support dog. Rather, it seems as if Plaintiff requested a letter from Yager because, as noted in a Psychiatric Medical Exam from Horizons Corporation ("Horizons"), he had already moved into an apartment building that did not allow dogs and his landlord was threatening to evict him. *See* Tr. 761. The only reasonable inference from the record is that Yager issued the letter as a courtesy to Plaintiff but did not, per her functional assessments, believe that the dog was necessary to Plaintiff's functioning in a workplace. Moreover, Plaintiff failed to include or even reference his dog in various subjective reports. *See* Tr. 418-427, 432-440. Furthermore, in his SSA application and supplemental paperwork, he does not reference the dog in any of his medication lists or treatment plans. On multiple occasions, when Plaintiff was asked if he wanted to provide additional application information, he mentioned bladder issues and shoulder pain, but notably absent was any mention of the dog, the benefit it provides to him, or in what situations it was necessary. *See id.*; Tr. 439, 474.

The Court acknowledges that the ALJ may not have addressed or considered the dog, but ultimately, this error is harmless because there is insufficient evidence that the dog is medically necessary. *See McGehee v. Berryhill*, 386 F. Supp. 3d 80, 88 (D. Mass. 2019) ("[A]lthough the ALJ's treatment of [plaintiff's] service dog was not exhaustive, [the ALJ's] failure to address this issue in the RFC assessment was not material because [plaintiff] failed to provide sufficient evidence that her dog was medically necessary.").

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 13, 2022
      Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York